UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X
VICTOR PEREZ,                     :
                                  :
                                  :
                Petitioner,       :    02 Civ. 3443 (MBM)
                                  :    OPINION AND ORDER
        -against-                 :
                                  :
BRIAN FISHER, Superintendent      :
Sing Sing Correctional Facility,  :
                                  :
                Respondent.       :
----------------------------------X

APPEARANCES:

VICTOR PEREZ
(Petitioner Pro Se)
#99-A-1132
Sing Sing Correctional Facility
Ossining, NY 10562

LUKE MARTLAND
(Attorney for the respondent)
Assistant Attorney General
of the State of New York
120 Broadway
New York, NY 10271
(212) 416-6536

MICHAEL B. MUKASEY, U.S.D.J.

Victor Perez petitions pro se pursuant to 28 U.S.C. §
2254 (2006) challenging his state court judgment of conviction
entered on February 3, 1999. He challenges his conviction of
four counts of criminal sale of a controlled substance on school
grounds under N.Y. Penal Law § 220.44(2) (McKinney 2001),
alleging that the prosecution failed to present sufficient
evidence that the sales occurred on school grounds as defined in
N.Y. Penal Law § 220.14(b). He challenges as well his conviction
of four counts of criminal sale of a controlled substance in the
first degree under N.Y. Penal Law § 220.43(1), alleging that
comments made by the prosecution during its closing argument
shifted the burden of proof to him and were otherwise improper.
In a Report and Recommendation (the "Report") dated September 20,
2005, Magistrate Judge Kevin Nathaniel Fox recommended (1) that
the petition be granted as to the N.Y. Penal Law § 220.44(2)
counts because petitioner was convicted of a crime for which he
did not have fair notice, and (2) that the petition be denied as
to the § 220.43(1) counts because there was no prosecutorial
misconduct. Respondent objects to the Report's findings
regarding the N.Y. Penal Law § 220.44(2) counts and petitioner to
the findings regarding the N.Y. Penal Law § 220.43(1) counts.

For the reasons set forth below, both of petitioner's
arguments for habeas corpus relief are without merit.

1

Accordingly, the requested relief is denied and the petition is dismissed in its entirety.

I.

Familiarity with the Report is assumed for current purposes, and only so much of the factual background as is necessary to resolve petitioner's and respondent's objections to the Report is set forth below.

On four occasions during September and October 1997, Perez participated in the completed sale of illegal drugs to an undercover New York City Police officer. (Rep. at 2)  On September 11, 1997, the officer approached Perez and Jose Santana as they stood on the stoop of a residential building at 501 West 134th Street, and requested cocaine. (Id.)  The officer and Santana negotiated the terms of the sale in the lobby of 501 West 134th Street and conducted the sale in the lobby of a residential building at 1512 Amsterdam Avenue. (Id. at 2-3) On September 18, 1997, the agent approached Perez and Jose Toribio as they sat on the stoop of 501 West 134th Street and again requested cocaine. (Id. at 3) The officer, Perez, and Toribio went inside the building lobby to negotiate the terms of the sale and then completed the sale inside a second-floor apartment. (Id.)  On September 23, 1997, the officer again approached Perez and Santana while they were on the stoop of 501 West 134th Street and requested cocaine; Perez and Santana told him to return the next

day. (Id. at 4) He returned and met Perez in an upstairs apartment at 501 West 134th Street, where the sale was negotiated and completed. (Rep. at 4) On September 30, 1997, the officer approached Perez and Toribio on the stoop of 501 West 134th Street; the three negotiated but did not complete a sale of cocaine in an upstairs apartment. (Id.) On October 3, 1997, the officer again approached Perez on the stoop of 501 West 134th Street. (Id.) Perez took him to a second floor apartment where he sold the undercover officer cocaine. (Id. at 4-5)

On March 13, 1998, Perez was arrested. (Id. at 5) A New York county grand jury indicted him for four counts of criminal sale of a controlled substance in the first degree under N.Y. Penal Law § 220.43(1) and four counts of criminal sale of a controlled substance on school grounds under N.Y. Penal Law § 220.44(2). (Id.)

During the closing argument at Perez's trial, the prosecutor told the jury "[y]ou hear[d] a lot of grand allegations during opening statement by the defense, none of which were proven." (Rep. at 5) Perez objected that this remark shifted the burden of proof to the defendant, and the Court sustained the objection, instructing the jury that "[t]he defendants don't have to prove anything, so please don't understand [the prosecution's] argument to be that. Opening statements themselves are not evidence." (Id.) The Court

admonished the prosecutor to "[p]lease comment on what is evidence." (Id.)  The prosecutor also stated that the defendants' arguments "appealed to your emotions.  They are based solely on innuendo, speculation. It's basically, ladies and gentlemen, a game of hide the ball." (Id.)  Perez's co-defendant objected to this comment; the Court sustained the objection and instructed the prosecutor "Don't comment on counsel's motives[;] concentrate on counsels' arguments." (Id. at 5-6) Finally, the prosecutor stated "There has [sic] been a lot of questions about English versus Spanish. Just because lawyers say their clients don't speak English doesn't mean that it's so." (Id. at 6) Perez's co-defendant objected but the Court overruled the objection. (Rep. at 6) At the end of closing statements, the Court instructed the jury to disregard all statements to which an objection was sustained, not to be influenced by such comments, not to draw inferences from them, and to focus on the evidence. (Id. at 7)

The jury found Perez guilty of all charges, and he was sentenced to an indeterminate prison term of 16 years to life on each first-degree sale count and an indeterminate prison term of 5 to 15 years for each school grounds count, all terms to run concurrently. (Id.)  Perez appealed the judgment of conviction to the New York State Supreme Court, Appellate Division, First Department, urging it to overturn his conviction because he was denied his Fourteenth Amendment due process right to a fair trial

4

as the evidence was insufficient to support the jury's finding
that he violated N.Y. Penal Law § 220.44(2) and the prosecutor's
comments during the closing argument were improper and
prejudicial. (Id.)  Under N.Y. Penal Law § 220.44(2), it is a
crime to sell a controlled substance "upon school grounds." Penal
Law § 220.00(14) defines school grounds as "any area accessible
to the public located within one thousand feet of the real
property boundary line comprising any such school . . . . For the
purposes of this section an 'area accessible to the public' shall
mean sidewalks, streets, parking lots, parks, playgrounds, stores
and restaurants."

The Appellate Division affirmed the judgment of
conviction. People v. Perez, 277 A.D.2d 1, 2, 715 N.Y.S.2d 398
(1st Dep't 2000).  As to the insufficient evidence argument, it
held that:

> The drug transactions that took place on
> September 11, 1997 and September 18, 1997,
> were negotiated on a stoop and in a public
> lobby of buildings well within the 1000-foot
> radius that defines "school grounds" (Penal
> Law § 220.00(14)), for purposes of proving a
> sale "in or near" such grounds. (see Penal
> Law § 220.44(5)).  With regard to the
> transactions of September 23 and October 3,
> which were initiated in a building within
> that radius but consummated in the privacy of
> a second-floor apartment, defendant's
> challenge to the location as an element of
> the crime was never presented to the trial
> court, and thus the point has not been
> preserved for appellate review . . . .

Id.  The Court found the prosecutorial misconduct claim "to be
without merit." Id.  The Petitioner sought leave to appeal to the
New York Court of Appeals and that application was denied. People
v. Perez, 96 N.Y. 2d 737, 722 N.Y.S.2d 804 (2001).

Perez filed his petition for a writ of habeas corpus on
May 6, 2002. He raises the same points of federal law in his
petition as he did on direct appeal to the Appellate Division.

II.

A district court reviewing a magistrate judge's report
follows the standard established in 28 U.S.C. § 636(b)(1) and
Fed. R. Civ. P. 72(b).  The district judge must make a de novo
determination of those parts of the report to which timely
written objection has been made by either party.  Respondent
objects to the Report's conclusions addressing whether Perez had
fair notice that his conduct fell under N.Y. Penal Law §
220.44(2).  Petitioner objects to the Report's conclusions
addressing the prosecutorial misconduct claim.  Therefore, the
Report is reviewed here de novo in its entirety.

III.

Under the Anti-Terrorism and Effective Death Penalty
Act of 1996, P.L. 104-132, 110 Stat 1214 (1996), a federal court
may grant habeas corpus relief to a state prisoner on a federal
claim only if that claim was "adjudicated on the merits" in state
court and if the federal court concludes that the adjudication of

the claim "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

A state prisoner presents a federal claim to a state court for adjudication by "(a) [relying] on pertinent federal cases employing [federal] constitutional analysis, (b) [relying] on state cases employing [federal] constitutional analysis in like fact situations, (c) [asserting] the claim in terms so particular as to call to mind a specific right protected by the Constitution, [or] (d) [alleging] a pattern of facts that is well within the mainstream of [federal] constitutional litigation." Daye v. Attorney General, 696 F.3d 186, 194 (2d Cir. 1982). Such a federal claim is not adjudicated on the merits if the state court's determination of the issue "rests on a state law ground that is independent of the federal question and adequate to support the judgment," which occurs when the appeal of a judgment of conviction has been procedurally defaulted. See Coleman v. Thompson, 501 U.S. 722, 729 (1991).

The Supreme Court interpreted "clearly established federal law" to mean "the holdings, as opposed to the dicta, of [the Supreme Court's] decisions as of the time of the relevant

state-court decision." <u>Williams</u> v. <u>Taylor</u>, 529 U.S. 362, 412 (2000). A decision is "contrary to" clearly established federal law, as determined by the Supreme Court, if "the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." <u>Williams</u>, 529 U.S. at 413. A decision is an "unreasonable application" of clearly established Supreme Court law if a state court "identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of [a] prisoner's case." <u>Id.</u> The inquiry for a federal habeas court is not whether the state court's application of the governing law was merely erroneous or incorrect, but whether it was "objectively unreasonable." <u>See</u> <u>Id.</u> at 408-410. Petitioner argues the Appellate Division's ruling resulted in a decision contrary to clearly established federal law because the Appellate Division unforeseeably interpreted N.Y. Penal Law § 220.00(14)(b) to cover his conduct and the Appellate Division found that the prosecutor's closing statements did not cause his trial to be fundamentally unfair.

A. The Appellate Division's Interpretation of § 220.00(14)(b)

Initially, respondent contends that the fair notice claims as to the N.Y. Penal Law § 220.44(2) conviction arising

out of the September 23 and October 3 transactions are procedurally barred[1], because the Appellate Division denied the claims as to those transactions as not properly preserved for appellate review. Perez, 277 A.D.2d at 2. Generally, a federal court cannot review state court judgment of conviction when that judgment was based upon a state procedural default, such as a failure to preserve an issue for review. See Coleman v. Thompson, 501 U.S. 722, 729 (1991).

However, claims that were decided on an independent and adequate state law ground can be reviewed on a federal habeas corpus petition if petitioner can show either cause for the default and a resulting prejudice or that a failure to consider the claim will result in a fundamental miscarriage of justice. See id. at 750. Petitioner does not allege cause; thus, his claims will be heard only if "a constitutional violation has probably resulted in the conviction of one who is actually innocent." Murray v. Carrier, 477 U.S. 478, 496 (1986). To establish actual innocence, petitioner must demonstrate that it is more likely than not that no reasonable juror would have convicted him in light of all the evidence. Dixon v. Miller, 293 F.3d 74, 81 (2d Cir. 2002).

---

[1]Respondent does not argue that the claims based on the school grounds convictions arising out of the September 11 and September 18 transactions or the prosecutorial misconduct claims are procedurally barred.

9

Petitioner argues that he is actually innocent of the N.Y. Penal Law § 220.44(2) conviction arising out of the September 23 and October 3 transactions, because it is uncontested that the sales were negotiated in a building lobby and "consummated in the privacy of a second-floor apartment." Perez, 277 A.D.2d at 2. Petitioner argues that residential building stoops, lobbies, and apartments and are not enumerated within the definition of "area[s] accessible to the public" in or around "school grounds" under N.Y. Penal Law § 220.00(14)(b); thus, he is actually innocent of the crime for which he was convicted because, as no evidence was provided at his trial that he sold drugs at any other location, no reasonable juror could find the prosecution proved each element of the crime beyond a reasonable doubt. If this contention has merit, the fundamental miscarriage of justice exception applies and the claim should be heard by this court despite the state procedural bar. The court will consider petitioner's due process claims relating to all four transactions that form the bases of the N.Y. Penal Law § 220.44(2) convictions.

In his brief submitted to the Appellate Division, petitioner alleged that his conviction violated both the Fourteenth Amendment and Jackson v. Virginia, 443 U.S. 307 (1979), which held a petitioner "is entitled to habeas corpus relief if it is found that upon the record evidence adduced at

the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." Id. at 324. Specifically, under In re Winship, 397 U.S. 358, 364 (1970), which established proof beyond a reasonable doubt as a requirement of Fourteenth Amendment due process, "it follows that when such a conviction occurs in a state trial, it cannot constitutionally stand." Id. at 317-18.

However, as pointed out in the Report and respondent's objections, the N.Y. Penal Law § 220.44(2) conviction violates, if anything, petitioner's Fourteenth Amendment right to fair notice as interpreted in Bouie v. City of Columbia, 378 U.S. 347 (1964), which held that due process requires a criminal statute to give fair warning of the conduct it prohibits.[2] See Ponnapula v. Spitzer, 297 F.3d 172, n.2 (2d Cir. 2002) ("It is possible, of course, that a state court's interpretation of a criminal statute may be so egregious as to be fundamentally unfair and thus violate due process. Under these rare circumstances, habeas relief may be warranted under . . . the fair notice aspect of the

---

[2] Generally, an application for review preserves an issue if "the nature or presentation of the claim [was] likely to alert the court to the claim's federal nature." Daye, 696 F.2d at 192. The petitioner need not cite a specific constitutional provision to alert state courts to the nature of the problem. Ramirez v. Attorney General of New York, 280 F.3d 87, 95 (2d Cir. 2001). Here petitioner cited the correct constitutional provision, the Fourteenth Amendment, and this was enough to alert the Appellate Division to the federal nature of the claims, even though the pro se petitioner did not cite the most applicable Supreme Court precedent.

Due Process Clause, but not under Winship.").  Under Bouie,

"[t]here can be no doubt that a deprivation of the right of fair

warning can result not only from vague statutory language but

also from an unforeseeable and retroactive judicial expansion of

narrow and precise statutory language." 378 U.S. 347, 352 (1964).

A criminal statute must "give a person of ordinary intelligence

fair notice that his contemplated conduct is forbidden by the

statute." Bouie, 378 U.S. at 351; Rogers v. Tennessee, 532 U.S.

451, 457 (2001).  Thus, a court's "unforeseeable and retroactive

judicial expansion" of a criminal statute without prior notice

violates due process. Id. at 457.  If the Appellate Division's

interpretation of N.Y. Penal Law § 220.00(14)(b) to include the

stoop of a private residential building was an unforeseeable

expansion of the statutory language retroactively applied to

petitioner, then the conviction is contrary to clearly

established federal law and his petition should be granted.

        Neither the state court nor this court need determine

whether the lobby of a residential building or a private

apartment are "area[s] accessible to the public," because all of

the transactions upon which Perez's convictions were based took

place, for purposes of N.Y. Penal Law § 220.44(2), on the stoop

of a residential building.  Under N.Y. Penal Law § 220.00(1),

"sell" is defined to include the "exchange" or "giv[ing]" of

drugs as well as any "offer" or "agree[ment] to do the same."

Thus, the crime occurs not merely when final terms are agreed upon or narcotics are exchanged for money, but when an offer or agreement to undertake such a negotiation and exchange is made.

On September 11, the undercover officer requested cocaine from Perez while he was standing on the stoop, Perez then offered to sell cocaine by ushering the officer into the lobby to discuss the terms of the sale. (Rep. at 2-3) On September 18, the same officer approached Perez on the same stoop and requested cocaine, Perez again offered to sell cocaine by taking the officer into the lobby to negotiate the sale. (Rep. at 3) On September 23, the same officer approached Perez on the same stoop and requested cocaine; Perez offered to sell cocaine by instructing the officer to come back the next day. (Rep. at 4) On September 30, the same officer approached Perez on the same stoop, and Perez offered to sell cocaine by taking the officer to the apartment where he had previously purchased cocaine. (Rep. at 4) Finally, on October 3, the same officer approached Perez on the same stoop, and Perez offered to sell cocaine by taking him to an apartment in the same building where all three of the previous transactions took place. (Rep. at 4)

Although, during the September 30 and October 3 transactions, the officer did not explicitly state he was approaching petitioner to purchase drugs, he had previously bought drugs at this very location from the petitioner and he was

13

immediately taken to the apartment where previous drug sales between the two had occurred.  Perez's response to the officer's approach -- to usher him inside and take him to a secure location where the drugs themselves could be provided -- was at least an offer and perhaps also an agreement.  The drug sale, for the purposes of N.Y. Penal Law § 220.00(1), took place when Perez offered or agreed to sell the cocaine; thus, in every transaction, Perez sold drugs on the stoop.  Before each transaction the officer either explicitly requested cocaine or implicitly requested it because he was recognized from pervious sales by Perez.  Such explicit and implicit requests were clearly understood by Perez and were followed by an offer to sell drugs, because each time Perez ushered the officer inside to either the lobby or an apartment to negotiate and ultimately exchange money for narcotics.  "Of necessity, the law has long recognized the efficacy of non-verbal communications.  From the formation of contracts by an offeree's silence, nod, hand signal or 'x' on an order blank to the doctrine of admission by silence, the law has legally realized that to offer guidance and comment meaningfully on the full range of human conduct, cognizance must be taken of communications other than by words." Perez, 277 A.D.2d at 3 (Saxe, J., concur.); Restat. 2d Contracts § 19 (1981).  Thus, in every transaction for which he was convicted, petitioner offered to sell drugs while on the stoop.

14

The Due Process Clause is not violated simply because an issue before the state court on the appeal of a conviction is a matter of first impression; the "touchstone is whether the statute, either standing alone or as construed, made it reasonably clear at the relevant time that the defendant's conduct was criminal." United States v. Lanier, 520 U.S. 259, 267 (1997). Novel state court constructions of criminal statutes that are "indefensible by reference to the law which had been expressed prior to the conduct in issue," Bouie, 378 U.S. at 354, are prohibited, but courts may provide "clarity . . . by judicial gloss on an otherwise uncertain statute" without violating the Due Process Clause requirement of fair notice as to what conduct constitutes a particular crime. Lanier, 520 U.S. at 266.

A court considering whether petitioner's conduct fell under a foreseeable interpretation of N.Y. Penal Law § 220.14(b), must recall "that it is not the province of a federal habeas court to reexamine state-court determinations on state law questions. In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States." Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); Ponnapula, 297 F.3d at 182. It is also important to recall that while federal habeas corpus relief "does not lie for errors of state law," Lewis v. Jeffers, 497 U.S. 764, 780 (1990), errors under state law can result in

15

violations of a constitutional right to due process because
"[o]nce states have promulgated laws to define criminal conduct .
. . due process protects a defendant from conviction unless he is
shown in a fair proceeding to have violated those laws." <u>Davis</u> v.
<u>Strack</u>, 270 F.3d 111, 123 (2d Cir. 2001).  The focus of our
inquiry, therefore, is whether it was foreseeable that the
Appellate Division would interpret N.Y. Penal Law § 220.14(b) to
include a stoop as an "area accessible to the public" that would
support a N.Y. Penal Law § 220.44(2) conviction in addition to
the enumerated "sidewalks, streets, parking lots, parks,
playgrounds, stores and restaurants."

 A federal court must read the statute and any authority
that may be available so as to determine whether the Appellate
Division's reading of the statute in this case was so
fundamentally unfair, <u>Ponnapula</u>, 297 F.3d at n.2, that the
statute gave this petitioner no reasonable notice that his
behavior fell within it, and his conviction therefore violated
due process.

 N.Y. Penal Law § 220.14(b) states that "'an area
accessible to the public' shall mean sidewalks, streets, parking
lots, parks, playgrounds, stores and restaurants."  Generally the
phrase "shall mean" is a phrase of limitation and restriction as
opposed to "shall include," which is a phrase of enlargement and
extension. <u>See</u>, <u>e.g.</u>, <u>American Surety Co.</u> v. <u>Marotta</u>, 287 U.S.

16

513, 517 (1933); <u>Matter of Maidman</u>, 2 B.R. 569, 575 (S.D.N.Y. 1980). However, a stoop still falls within a narrow reading of N.Y. Penal Law § 220.14(b). A sidewalk, being that open portion between a building and the street, is no different from a stoop, because a stoop is immediately adjacent to the sidewalk, open and publicly accessible, and even more visible then some parts of the sidewalk itself because it is raised above the ground. Further, a stoop partakes of all of the features of a sidewalk that pertain to this statute: it is accessible, without any physical barrier, from the street or sidewalk by anyone, and anyone on the sidewalk or street can be haled or accosted by a person on the stoop as easily as he can be by a person on the sidewalk. Thus, a stoop, for statutory purposes, is no more than a raised portion of the sidewalk.

Such a reading is consistent with the purpose of the 1994 amendment to N.Y. Penal Law § 220.14(b) to add the sentence defining the term "area accessible to the public" as "sidewalks, streets, parking lots, parks, playgrounds, stores and restaurants," 1994 Session Laws of N.Y., Ch. 292 (A. 6903-B)(McKinney 2001), which was to create "drug free corridors" around schools. Mem. of Legis. Rep. of City of N.Y., 1994 Session Laws of N.Y. at 2669. As the statutory purpose was to prevent children from encountering drug deals, it is counter-intuitive for the statute not to apply to drug deals being made on a stoop,

which is adjacent to and visible from sidewalks and streets.
Further, a stoop does not possess the physical barriers to
viewing or entry that are present even in the enumerated stores
and restaurants as well as in many parking lots and playgrounds.

The Appellate Division decision that Perez challenges
was the first intermediate appellate case to reach the issue of
which locations are covered under the statute, and that issue has
not been addressed by the New York Court of Appeals.  However, a
federal court is not relieved of the bar against reviewing state
law issues "simply because the claim is a matter of first
impression" and was not decided by the state's highest court.  See
Ponnapula, 297 F.3d at 183.

Here, the decision of a New York state trial court in
New York v. Gaines, 167 Misc. 2d 923, 640 N.Y.S.2d 734 (N.Y. Sup.
Ct. Queens County 1996) is instructive.  Gaines held that an
alleged sale of cocaine within one thousand feet of a public
school, which was negotiated on a sidewalk outside an apartment
building and conducted in the lobby of that building, fell within
the conduct criminalized under N.Y. Penal Law §§ 220.14(b),
220.44.  Id. at 924.  The Court found that "a literal and
exclusionary interpretation of Penal Law § 220.00(14)(b) would
mean that criminal sale of a controlled substance in or near
school grounds could be prosecuted only if the completed sale
took place on sidewalks, on streets, or in parking lots, parks,

18

playgrounds, stores or restaurants. However, this court finds

that such an interpretation would work an unjust or unreasonable

result, as the legislative intent was to include any area

accessible to the public." Id. at 926. The Court held that "the

lobby of an apartment house is a public place as accessible to

the public from the sidewalk as a store or a restaurant or a

parked automobile or other parked vehicle would be accessible

from the sidewalk." Id. Under this reasoning, a stoop a fortiori

lies within the definition of an "area accessible to the public"

as it is directly adjacent to and visible from the sidewalk, and

presents even fewer barriers to public entry and viewing than a

lobby. Although this court is not bound by Gaines, the ease with

which that Court reached its conclusion suggests how a New York

court would read N.Y. Penal Law §§ 220.14(b), and this court

finds, for its own independent reasons set forth above, that a

stoop is a part of the sidewalk.

Taking into account the text of N.Y. Penal Law §

220.14(b), the purpose of the statute, and a prior judicial

interpretation in a similar case, petitioner was placed on

reasonable notice that he was acting in an "area accessible to

the public" and he cannot plausibly claim unfair surprise that

his conduct was prohibited by N.Y. Penal Law § 220.14(b). See

Lanier, 520 U.S. at 269-70 (requiring, as adequate notice for due

process purposes, only "reasonable warning," rather than

fundamentally similar prior cases). Thus, the Appellate Division's finding that the stoop was an "area accessible to the public" sufficient to support a N.Y. Penal Law § 220.44 conviction was not an unforeseeable state-court construction of a criminal statue applied retroactively in violation of the Fourteenth Amendment. Accordingly, the September 23 and October 3 transactions are procedurally barred, because petitioner does not satisfy the actually innocent standard. His conduct falls squarely within that proscribed by N.Y. Penal Law § 220.00(14)(b) as interpreted by the New York state courts, such that a juror could find him guilty beyond a reasonable doubt based on the evidence presented by the prosecution. Further, petitioner's claims based on the September 11 and September 18 transactions fail because he was provided with fair notice of the crime for which he was convicted and, based on the evidence provided by the prosecution at his trial, a reasonable juror could have found him guilty of selling a controlled substance in or near school grounds.

B. Prosecutorial Misconduct

Petitioner claims additionally that he was deprived of his due process right to a fair trial because the prosecutor improperly "denigrated" him and his counsel, and shifted the burden of proof at trial to the petitioner during closing argument.

The scope of habeas review for allegations of prosecutorial misconduct is "quite limited." <u>Tankleff</u> v. <u>Senkowski</u>, 135 F.3d 235, 252 (2d Cir. 1998). Relief is available only where the court "find[s] that the prosecutor's comments constituted more than mere trial error, and were instead so egregious as to violate the defendant's due process rights." <u>Id.</u> (citing <u>Donnelly</u> v. <u>DeChristoforo</u>, 416 U.S. 637, 647-48 (1974); <u>Floyd</u> v. <u>Meachum</u>, 907 F.2d 347, 353 (2d Cir. 1990)). Thus, "[e]ven when a prosecutor's remarks are improper, 'constitutional error occurs only when the prosecutorial remarks were so prejudicial that they rendered the trial in question fundamentally unfair.'" <u>Washington</u> v. <u>Walker</u>, No. 89-7841, 1994 WL 391947, at *3 (S.D.N.Y. July 28, 1994) (quoting <u>Floyd</u>, 907 F.2d at 355).

To succeed on a claim of prosecutorial misconduct with respect to comments during a closing argument, the petitioner must show "that he suffered actual prejudice because the . . . [comments] had a substantial and injurious effect or influence in determining the jury's verdict." <u>Bentley</u> v. <u>Scully</u>, 41 F.3d 818, 824 (2d Cir. 1994). Three factors are considered to determine whether such prejudice occurred: "(1) the severity of the misconduct; (2) the nature of the curative measures taken to remedy the prejudice, if any; and (3) the certainty of the conviction absent the improper conduct." <u>Jones</u> v. <u>Spitzer</u>, No.

01-9754, 2003 WL 11563780, at *31 (S.D.N.Y. Mar. 26, 2003) (citing Bentley, 41 F.3d at 824).

Although the prosecution made two arguably improper comments during its closing arguments, the severity of such misconduct was limited as the Court took prompt curative measures to ensure the jury disregarded the comments.  In response to the objection to the prosecution's comment that the defense had not presented proof to support arguments made in its opening, the Court admonished the prosecutor in front of the jury and instructed the jury to disregard the comment.  The Court sustained an objection to the prosecutor's claim that defense counsel made arguments that were emotionally based and speculative, and was trying to "hide the ball."  The Court reminded the prosecutor not to "comment on counsel's motives." Additionally, the Court instructed the jury at the end of the trial to disregard both statements, not to be influenced by them, and not to draw conclusions from them.  The Court's prompt and forceful curative measures in response to both comments were more than enough to prevent a violation of petitioner's due process rights. See Donnelly, 416 U.S. at 643 (finding a prosecutor's statement during closing argument that "[Respondent and his counsel] said they hope that you find him not guilty.  I quite frankly think that they hope that you find him guilty of something a little less than first-degree murder" was not a

violation of due process, because respondent's counsel objected
immediately and the Court instructed the jury those "closing
arguments are not for your consideration" and "to disregard that
statement"). Petitioner is not entitled to habeas corpus relief
based on alleged prosecutorial misconduct.

                *                *                *

        For the above reasons, the writ will not issue and
Perez's petition is dismissed.

                                        SO ORDERED:

Dated: New York, New York                Michael B. Mukasey
        March 1, 2006                    U.S. District Judge